## In re LENT'S ESTATE.
### (1 Misc. 264.)

*(Surrogate's Court, Rockland County, Filed November, 1892.)*

ADMINISTRATOR—JUDICIAL SETTLEMENT—JOINT DEPOSITS.

> When it appeared that although an intestate had two deposits in banks in his own name. the same represented the earnings of decedent and of his brother, the administrator, and as the evidence disclosed that they both worked for about the same period of time at the same wages, *held,* that the administrator having drawn the entire moneys, was liable to account for one-half thereof, and also *held,* that as to a third deposit in the joint names of intestate and the administrator, as it appeared that this sum also represented the joint earnings of the brothers, the administrator should likewise charge himself with one moiety thereof.

Judicial settlement of administrator's accounts.

Irving Brown, for administrator; William McCauley, Jr., for contestant.

WEIANT, S.—Daniel Lent, the intestate, died October 16, 1890.   William H. Lent was appointed administrator of his estate on December 20 of the same year.   The administrator, in this proceeding, now renders his account, wherein he charges himself with assets consisting of one-half the principal and interest of a bond and mortgage aggregating $222.50, and credits himself with payments therefrom amounting to $212 ; thus leaving a balance in his hands of $10.50.   The contestant interposed objections by which he alleges that assets have come into the hands of the administrator, for which he has failed to account, and with which he should be charged.   The evidence discloses

that the intestate, about August 3, 1870, opened an account with the Peekskill Savings Bank, in his individual name, which was continued during his lifetime, and at the time of his death closed, with a balance appearing to be due him from the bank of about $2,800. On January 7, 1891, the administrator collected all of this money from the said savings bank, aggregating $2,821.55, and on the same day opened an account in his individual name in the same bank, and deposited a like sum of $2,821.55 to his credit. On August 5, 1887, the intestate deposited in his individual name, in the Westchester County National Bank, the single sum of $800. The credit remained there at the time of his death, and the same was paid to the administrator, upon his check drawn as such, on January 7, 1891. On the next day the said sum of $800 was placed for safe-keeping in the hands of Walter T. Searing, secretary of the Tompkins Cove Lime Company, by which company the administrator was employed. On or about May 20, 1890, an account was opened with the said Peekskill Savings Bank, by the intestate, in the name of "Daniel and Wm. H. Lent," and which was continued down to the time of his death. On January 7, 1891, the whole of this account was withdrawn by the administrator, being the sum of $709.62, and on the same day he deposited that exact sum to his individual account in the same bank.

The contestant claims, under the proofs adduced, that the administrator should be charged with each of these several amounts of $2,281.55 and $800, and one-half of the $709.62. My opinion is that he should be charged with one-half of each sum. The $2,821.55 is made up of a series of deposits covering the period from August 3, 1870, to January 1, 1891, ranging from $50 to $300 each, and the accumulations of interest thereon. The fact that the account was in the individual name of the intestate makes the claim upon the bank, presumptively, an asset of his estate. It is the rule that a bank, by receiving a deposit, becomes a mere debtor to the depositor. People v. Mechanics' Sav. Inst., 92 N. Y. 7; Whitlock v. Bank, 36 Hun,

460. The deposit, when made, becomes the property of the corporation. The depositor is a creditor for the amount of the deposit, which the corporation becomes liable to pay, according to the terms of the contract under which it is made. Id. Here, then, was a debt, as appears from the account in the bank book, due to the intestate from the bank, and upon the discharge thereof, by payment of the amount of the same to this administrator, the proceeds became *prima facie* assets in his hands to full amount, and for which he is accountable as such. But there is evidence submitted that impresses me that the moneys deposited to this account, and which raised this indebtedness from the bank, were not wholly those of the intestate. It appears that this intestate and this administrator were brothers, aged, respectively, when the former died, about 60 and 58 years; that they had always remained unmarried; that they had always lived, had their home, and worked, together. A sister kept house for them. They had borne the home expenses together, and their earnings, I am authorized to infer, were kept together. The evidence of Mr. Searing shows that they worked for the Tompkins Cove Lime Company for thirty years or more; that they were both blacksmiths, and performed the same kind of work and received the same wages; that each worked about the same time, with the exception of a period of about three months in the early part of the year 1890, when the intestate was ill. Their habits, expenses, and mode of life were about the same. They were both of the same mind in that respect, and economical and industrious. Whichever found it convenient to collect their wages, did so for both. The lime company kept but one account against them, and that was in the name of Daniel, the intestate. They collected their wages weekly, semi-monthly, or monthly, according as the company paid, on its pay day. It also appears that soon after the savings bank account was opened, in 1870, the intestate signed an order in the back part of his bank book containing such account, whereby he requested the bank to pay William H. Lent, this administrator, "the whole or any part of the money due, or which may be

due, me from said bank," etc. It is fair to infer that he did this because his brother had a like interest as hmself in the account. The evidence shows that the intestate could write, that this administrator could not, and that the testator was the one who transacted all business in which both were interested. From these facts, and all the circumstances, I am led to believe that these two brothers accumulated their net earnings, placed them together, and deposited the same in this bank, to the credit of the intestate, in about equal amounts, and that, notwithstanding that the account was in the name of the deceased brother, the moneys so deposited were equally those of the administrator, and that while the debt of the bank for the same was, upon face thereof, one to Daniel, yet, in reality and truth, it was one in which William had an equal interest. The testimony of Mrs. Osborne, a sister, and of William H. James, a neighbor, is corroborative of this view. It appears, also, that these brothers acquired and held other property jointly, and through their joint earnings. It is therefore my judgment that the administrator should be charged with but one-half of the sum collected on that account. What has been said touching this sum of $2,821.55 is alike applicable to the deposit of $800 in the Westchester County National Bank. It represented, I am led to believe, an accumulation, also, of the earnings of the two brothers, in which each had an equal interest, and that but one-half of the sum paid to the administrator by that bank should be charged to him on this accounting.

We come now to a consideration of the account which stood in the joint names of the brothers. The funds deposited to the credit of this account were also the earnings of both. Indeed, the account was opened by a deposit of $400 on May 20, 1890; being the same day that the individual account of Daniel shows that a like sum was drawn therefrom. This also adds another circumstance to those above advanced, showing that both brothers were interested in the moneys deposited to the individual account of Daniel. The account being in this instance in the name of both, upon its face the legal conclusion is

that it created a debt in which each was equally interested, and the facts and circumstances, and the presumed legal liability, are thus in accord. But it may be suggested that here was a joint tenancy, and the principle of survivorship applies, which exists in the case of a joint tenancy in lands. 2 Kent, Comm. 350. This form of tenancy is not favored. The common-law rule was reversed by statute as to lands (1 Rev. St. p. 727, sec. 44; 1 Willard, Real Est. 177 *et seq.*), and the courts have applied the same rule as to personalty. The unities requisite to constitute that estate are lacking. The deposits represented the separate earnings of each. Each contributed to the fund, and, as between themselves, their interests therein were several, and not joint. That doctrine, however, does not apply to a mixture or confusion of goods. Where the mixture is by mutual consent, the proprietors have a joint interest in proportion to their respective shares, and in case of a confusion of goods, where those of two persons are so intermixed that they can no longer be distinguished, each of them has an equal interest in the subject as tenants in common, if the intermixture was by consent. 2 Kent, Comm. 364; Nowlen v. Colt, 6 Hill, 461. But this is not even a case of the intermixture or confusion of moneys; for, as we have seen from the authorities above cited, the moneys, when deposited, became the property of the bank. The liability of the bank was one of debt, and, as to this account, a joint liability to the two brothers. The principle seems to be settled that the right of action on an obligation to two joint obligees, or on a promise for payment of a sum of money to two joint promisees, vests on the death of one in the survivor. But the right of the deceased obligee or promisee is not extinguished by his death. The survivor will hold the security and the proceeds, as trustee, to the extent of the interest of the deceased joint obligee or promisee in the debt or fund. Mulcahey v. Bank, 89 N. Y. 438. Their interests, as between themselves, were several, not joint. Id.; Gaffney v. Administrator, 4 Dem. Sur. 223. Where money was deposited in a bank in the names of a man and his wife, of which money the husband was the

sole owner, upon the husband's death the fund belongs to his beneficiaries, notwithstanding the form and mode of the deposit. Wortman v. Robinson, 44 Hun, 358. The administrator must so adjust his accounts as to charge himself with one-half of these several sums of $2,821.55, $800, and $709.62, and the accumulations of interest thereon, and account for and distribute the same as a part of the estate of the intestate. Let a decree be entered accordingly; costs to both parties to be paid out of the estate.